UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

SEP 15 2016

David J. Bradley, Clerk of Court

Sealed
Public and unofficial staff access to this instrument are prohibited by court order.

UNITED STATES OF AMERICA §
§
v. § Criminal No.
§
DOUGLAS RAY, § UNDER SEAL
§
Defendant. §

16 CR 0409

### INFORMATION

The United States charges that at all times material to this Information (unless otherwise specified):

### General Allegations

1. The Foreign Corrupt Practices Act of 1977 ("FCPA"), as amended, Title 15, United States Code, Sections 78dd-1, *et seq.*, was enacted by Congress for the purpose of, among other things, making it unlawful to act corruptly in furtherance of an offer, promise, authorization, or payment of money or anything of value, directly or indirectly, to a foreign official for the purpose of obtaining or retaining business for, or directing business to, any person.

2. "Foreign State Government 1" was the government of one of the thirty-one states that comprise Mexico. Foreign State Government 1 was a "foreign government," and an "agency" and "department" of a foreign government, as those terms are used in the FCPA.

3. "Foreign Official 1" was an employee of Foreign State Government 1 with responsibility for maintaining Foreign State Government 1's aircraft from at least in or around 2005 through in or around December 2010. From at least in or around 2005 through in or around December 2010, Foreign Official 1 was a "foreign official," as that term is used in the FCPA.

4. "Foreign State Government 2" was the government of one of the thirty-one states that comprise Mexico. Foreign State Government 2 was a "foreign government," and an "agency" and "department" of a foreign government, as those terms are used in the FCPA.

5. "Foreign Official 2" was an employee of Foreign State Government 2 with responsibility for maintaining Foreign State Government 2's aircraft from at least in or around 2005 through at least in or around 2010. From at least in or around 2005 through at least in or around 2010, Foreign Official 2 was a "foreign official," as that term is used in the FCPA.

6. "Foreign State Government 3" was the government of one of the thirty-one states that comprise Mexico. Foreign State Government 3 was a "foreign government," and an "agency" and "department" of a foreign government, as those terms are used in the FCPA.

7. "Foreign Official 3" was an employee of Foreign State Government 3 with responsibility for maintaining Foreign State Government 3's aircraft from at least in or around 2006 through at least in or around 2014. From at least in or around 2006 through at least in or around 2014, Foreign Official 3 was a "foreign official," as that term is used in the FCPA.

8. "Foreign State Government 4" was the government of one of the thirty-one states that comprise Mexico. Foreign State Government 4 was a "foreign government," and an "agency" and "department" of a foreign government, as those terms are used in the FCPA.

9. "Foreign Official 4" was an employee of Foreign State Government 4 with responsibility for maintaining Foreign State Government 4's aircraft from at least in or around 2005 through at least in or around 2013. From at least in or around 2005 through at least in or around 2013, Foreign Official 3 was a "foreign official," as that term is used in the FCPA.

10. "Foreign Law Enforcement" was a federal law enforcement organization of Mexico. Foreign Law Enforcement was controlled by Mexico and performed a public function

of Mexico. Thus, Foreign Law Enforcement was an "agency" and "instrumentality" of a "foreign government," as those terms are used in the FCPA.

11. "Foreign Official 5," "Foreign Official 6," and "Foreign Official 7," were employees of Foreign Law Enforcement with responsibility for maintaining Foreign Law Enforcement's aircraft from at least in or around 2009 through at least in or around 2012. From at least in or around 2009 through in or around 2012, Foreign Official 5 and Foreign Official 6 were each a "foreign official," as that term is used in the FCPA. From at least in or around 2009 through in or around 2013, Foreign Official 7 was a "foreign official," as that term is used in the FCPA.

12. "Aviation Corporation A" was a United States company, headquartered in Houston, Texas, which provided maintenance, repair, overhaul, and related services to customers in the United States and Mexico, including to Foreign State Government 1, Foreign State Government 2, Foreign State Government 3, Foreign State Government 4, Foreign Law Enforcement, and others.

13. The defendant, **DOUGLAS RAY** ("defendant **RAY**") was a citizen of the United States and a resident of Texas. Defendant **RAY** was the President of Aviation Corporation A and an owner of Aviation Corporation A from at least in or around 2002 through at least in or around May 2016. At all relevant times, defendant **RAY** was a "domestic concern" and an owner, officer, employee, and agent of a "domestic concern," as those terms are used in the FCPA.

14. "Co-Conspirator 1" was a citizen of Mexico. Co-Conspirator 1 was an agent of Aviation Corporation A from at least in or around 2005 through at least in or around May 2016.

Thus, at all relevant times, Co-Conspirator 1 was an agent of a "domestic concern," as that term is used in the FCPA.

## COUNT ONE
### Conspiracy to violate the FCPA
### (18 U.S.C. § 371)

15. From on or about January 1, 2006 through on or about March 31, 2016, in the Southern District of Texas, and elsewhere within the jurisdiction of the Court, the defendant,

**DOUGLAS RAY,**

did knowingly and willfully conspire, confederate and agree with others, known and unknown, including Co-Conspirator 1, to commit offenses against the United States, that is, to willfully make use of the mails and means and instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, and authorization of the payment of any money, offer, gift, promise to give, and authorization of the giving of anything of value, to a foreign official, and to a person, while knowing that all or a portion of such money and thing of value would be and had been offered, given, and promised to a foreign official, for purposes of: (i) influencing acts and decisions of such foreign official in his or her official capacity; (ii) inducing such foreign official to do and omit to do acts in violation of the lawful duty of such official; (iii) securing an improper advantage; and (iv) inducing such foreign official to use his or her influence with a foreign government and agencies and instrumentalities thereof to affect and influence acts and decisions of such government and agencies and instrumentalities, in order to assist defendant **RAY** and others in obtaining and retaining business for and with, and directing business to, Aviation Corporation A, in violation of Title 15, United States Code, Section 78dd-2.

## Purpose of the Conspiracy

16. It was a purpose of the conspiracy for defendant **RAY** and his co-conspirators to obtain and retain business for Aviation Corporation A from Foreign State Government 1, Foreign State Government 2, Foreign State Government 3, Foreign State Government 4, Foreign Law Enforcement, and other foreign governments, agencies, and instrumentalities thereof (the "Foreign Governments and Instrumentalities") by paying bribes to foreign officials (the "Foreign Officials"), including Foreign Official 1, Foreign Official 2, Foreign Official 3, Foreign Official 4, Foreign Official 5, Foreign Official 6, Foreign Official 7, and others.

## Manner and Means of the Conspiracy

17. The manner and means by which defendant **RAY** and his co-conspirators sought to accomplish the purpose and object of the conspiracy included, among other things, in the Southern District of Texas and elsewhere, the following:

18. Defendant **RAY**, together with others, including Co-Conspirator 1, discussed in person, and through other means, making the bribe payments – which they sometimes called "commissions" – to the Foreign Officials in order to obtain and retain business with the Foreign Governments and Instrumentalities.

19. Defendant **RAY**, together with others, including Co-Conspirator 1, agreed to pay, promised to pay, and authorized the payment of money to, and for the benefit of, the Foreign Officials to help Aviation Corporation A obtain and retain business with the Foreign Governments and Instrumentalities.

20. Defendant **RAY**, together with others, including Co-Conspirator 1, communicated with the Foreign Officials about the bribes, including the manner in which they would be paid.

21. Defendant **RAY**, the Foreign Officials, and others caused bribe payments to be deposited into bank accounts controlled by the Foreign Officials in Texas and elsewhere.

22. Defendant **RAY**, together with others, including Co-Conspirator 1, caused payments to be made into Co-Conspirator 1's bank accounts in the United States and caused bribe payments to be made in cash in Mexico.

23. Defendant **RAY**, the Foreign Officials, and others took steps to conceal the bribe scheme, including by hiding the amount of the bribe payments in invoices sent to the Foreign Governments and Instrumentalities.

## Overt Acts

24. In furtherance of the conspiracy, and to accomplish its object and purpose, the conspirators committed, and caused to be committed, in the Southern District of Texas and elsewhere, the following overt acts, among others:

    a. On or about March 12, 2009, defendant **RAY** and others caused Aviation Corporation A to make a corrupt payment to Foreign Official 4 in the amount of approximately $9,748 from Aviation Corporation A's bank account in Texas.

    b. On or about June 11, 2009, defendant **RAY** and others caused Aviation Corporation A to make a corrupt payment to Foreign Official 2 in the amount of approximately $10,000 from Aviation Corporation A's bank account in Texas.

    c. On or about December 15, 2010, defendant **RAY** and others caused Aviation Corporation A to make a corrupt payment to Foreign Official 1 in the amount of approximately $155,000 from Aviation Corporation A's bank account in Texas that was deposited into Foreign Official 1's bank account in Texas.

6

    d.  On or about June 29, 2011, defendant **RAY** and others caused Aviation Corporation A to make a corrupt payment to Foreign Official 3 in the amount of approximately $3,299 from Aviation Corporation A's bank account in Texas.

    e.  On or about February 29, 2012, defendant **RAY** and others caused Aviation Corporation A to make a corrupt payment to Co-Conspirator 1 in the amount of approximately $19,754 from Aviation Corporation A's bank account in Texas.

  All in violation of Title 18, United States Code, Section 371.

**COUNT TWO**
**Conspiracy to commit Wire Fraud**
**(18 U.S.C. § 371)**

  25.  From on or about January 1, 2006 through on or about March 31, 2016, in the Southern District of Texas, and elsewhere within the jurisdiction of the Court, the defendant,

**DOUGLAS RAY,**

did knowingly, willfully, and intentionally combine, conspire, confederate and agree with others, known and unknown, including Co-Conspirator 1, to commit offenses against the United States, that is, to devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice in violation of Title 18, United States Code, Section 1343.

### Purpose of the Conspiracy

26.     It was a purpose of the conspiracy for defendant **RAY** and his co-conspirators to obtain money from privately owned entities in the United States and in Mexico by means of materially false and fraudulent pretenses, representations, and promises.

### Manner and Means of the Conspiracy

27.     The manner and means by which defendant **RAY** and his co-conspirators sought to accomplish the purpose and object of the conspiracy included, among other things, in the Southern District of Texas and elsewhere, the following:

28.     Defendant **RAY**, together with others, including Co-Conspirator 1, agreed that Aviation Corporation A would pay bribes and kickbacks to employees, agents, and representatives of privately owned entities located in the United States and Mexico in order to obtain and retain business with those entities.

29.     Defendant **RAY**, together with others, including Co-Conspirator 1, discussed the payment of bribes to employees, agents, and representatives of privately owned entities located in the United States and Mexico – which they sometimes called "commissions" – in person and through other means, including on the telephone and through electronic mail.

30.     Defendant **RAY**, together with others, including Co-Conspirator 1 and employees, agents, and representatives of privately owned entities located in the United States and Mexico, concealed material facts from those entities in connection with the bribery and kickback scheme.

31.     Defendant **RAY**, together with others, including Co-Conspirator 1, caused Aviation Corporation A to send invoices from the Southern District of Texas to privately owned entities located in the United States and Mexico that hid the cost of the bribe and kickback

payments promised to employees, agents, and representatives of those entities within Aviation Corporation A's pricing.

32. Defendant **RAY**, together with others, including Co-Conspirator 1, caused privately owned entities located in the United States and Mexico to make wire payments from bank accounts located in the United States and Mexico to the bank account of Aviation Corporation A for goods and services procured as a result of the bribery and kickback scheme.

33. Defendant **RAY**, together with others, including Co-Conspirator 1, caused bribe and kickback payments to be deposited into bank accounts located in Texas and elsewhere.

34. Defendant **RAY**, together with others, including Co-Conspirator 1, agreed with employees of privately owned entities located in the United States and Mexico to share the proceeds of the bribery and kickback scheme and to conceal the bribery and kickback scheme from those entities.

## Overt Acts

35. In furtherance of the conspiracy, and to accomplish its object and purpose, the conspirators committed, and caused to be committed, in the Southern District of Texas and elsewhere, the following overt acts, among others:

    a. On or about May 23, 2011, defendant **RAY** and others caused Aviation Corporation A to send an invoice from the Southern District of Texas to a privately owned entity in Mexico that was inflated to include and hide the cost of a bribe and kickback payment promised to an employee of the entity.

    b. On or about February 10, 2014, defendant **RAY** and others caused Aviation Corporation A to send an invoice from the Southern District of Texas to a privately

owned entity in Mexico that was inflated to include and hide the cost of a bribe and kickback payment promised to an employee of the entity.

All in violation of Title 18, United States Code, Section 371.

## NOTICE OF CRIMINAL FORFEITURE

36. Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), the United States hereby gives notice to the defendant, **DOUGLAS RAY**, that upon conviction of the offenses charged in Counts One and Two of this Information, all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses is subject to forfeiture.

### Money Judgment

37. Defendant is notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture.

### Substitute Assets

38. Defendant is notified that in the event that property subject to forfeiture, as a result of any act or omission of defendant,

    (A) cannot be located upon the exercise of due diligence;

    (B) has been transferred or sold to, or deposited with, a third party;

    (C) has been placed beyond the jurisdiction of the court;

    (D) has been substantially diminished in value; or

    (E) has been commingled with other property that cannot be divided without difficulty,

the United States will seek to forfeit any other property of the defendant up to the total value of the property subject to forfeiture pursuant to Title 21, United States Code, Section 853(p), as incorporated by reference in Title 28, United States Code, Section 2461(c).

| | |
|---|---|
| ANDREW WEISSMANN<br>CHIEF, FRAUD SECTION | KENNETH MAGIDSON<br>UNITED STATES ATTORNEY |
| /s/<br>CHRISTOPHER CESTARO<br>KEVIN GINGRAS<br>Trial Attorneys<br>United States Department of Justice<br>Criminal Division, Fraud Section | /s/<br>JESSE SALAZAR<br>ARTHUR R. JONES<br>Assistant United States Attorney<br>Southern District of Texas |